# Exhibit 1 –
# Utah Senate Bill 194

**Enrolled Copy**                                                     **S.B. 194**

1               **SOCIAL MEDIA REGULATION AMENDMENTS**

                           2024 GENERAL SESSION

                              STATE OF UTAH

               **Chief Sponsor: Michael K. McKell**

               House Sponsor: Jordan D. Teuscher

2

3   **LONG TITLE**

4   **General Description:**

5      This bill enacts provisions related to age assurance and protecting minors in the Utah Minor

6   Protection in Social Media Act (Act).

7   **Highlighted Provisions:**

8      This bill:

9      ‣ defines terms;

10     ‣ requires social media companies to verify a new account holder's age using an approved

11   system;

12     ‣ requires a social media service to:

13        • enable maximum default privacy settings on a Utah minor account holder's account;

14        • provide supervisory tools and verifiable parental consent mechanisms on a Utah

15   minor account holder's account; and

16        • provide confidentiality protections for minors' data;

17     ‣ establishes the Division of Consumer Protection's enforcement powers relating to the

18   Act;

19     ‣ provides compliance safe harbors when social media companies implement approved

20   systems for age assurance and verifiable parental consent; and

21     ‣ contains a severability clause.

22   **Money Appropriated in this Bill:**

23      None

24   **Other Special Clauses:**

25      This bill provides a special effective date.

26      This bill provides a coordination clause.

27   **Utah Code Sections Affected:**

28    AMENDS:

29    **13-2-1 (Effective 05/02/24)**, as last amended by Laws of Utah 2023, Chapters 31, 36, 377,

30    458, 477, 498, 509, and 536

31    ENACTS:

32    **13-71-101 (Effective 10/01/24)**, as Utah Code Annotated 1953

33    **13-71-102 (Effective 10/01/24)**, as Utah Code Annotated 1953

34    **13-71-201 (Effective 10/01/24)**, as Utah Code Annotated 1953

35    **13-71-202 (Effective 10/01/24)**, as Utah Code Annotated 1953

36    **13-71-203 (Effective 10/01/24)**, as Utah Code Annotated 1953

37    **13-71-204 (Effective 10/01/24)**, as Utah Code Annotated 1953

38    **13-71-301 (Effective 10/01/24)**, as Utah Code Annotated 1953

39    **13-71-302 (Effective 10/01/24)**, as Utah Code Annotated 1953

40    **13-71-401 (Effective 10/01/24)**, as Utah Code Annotated 1953

41    **Utah Code Sections affected by Coordination Clause:**

42    **78B-3-1101**, as Utah Code Annotated 1953

43    ════════════════════════════════════════════════

44    *Be it enacted by the Legislature of the state of Utah:*

45    Section 1. Section **13-2-1** is amended to read:

46    **13-2-1  (Effective 05/02/24). Consumer protection division established --**

47    **Functions.**

48    (1)  There is established within the Department of Commerce the Division of Consumer

49    Protection.

50    (2)  The division shall administer and enforce the following:

51    (a)  Chapter 10a, Music Licensing Practices Act;

52    (b)  Chapter 11, Utah Consumer Sales Practices Act;

53    (c)  Chapter 15, Business Opportunity Disclosure Act;

54    (d)  Chapter 20, New Motor Vehicle Warranties Act;

55    (e)  Chapter 21, Credit Services Organizations Act;

56    (f)  Chapter 22, Charitable Solicitations Act;

57    (g)  Chapter 23, Health Spa Services Protection Act;

58    (h)  Chapter 25a, Telephone and Facsimile Solicitation Act;

59    (i)  Chapter 26, Telephone Fraud Prevention Act;

60    (j)  Chapter 28, Prize Notices Regulation Act;

61    (k)  Chapter 32a, Pawnshop, Secondhand Merchandise, and Catalytic Converter

**Enrolled Copy**                                                                                           **S.B. 194**

| | |
|---|---|
| 62 | Transaction Information Act; |
| 63 | (l)  Chapter 34, Utah Postsecondary School and State Authorization Act; |
| 64 | (m)  Chapter 41, Price Controls During Emergencies Act; |
| 65 | (n)  Chapter 42, Uniform Debt-Management Services Act; |
| 66 | (o)  Chapter 49, Immigration Consultants Registration Act; |
| 67 | (p)  Chapter 51, Transportation Network Company Registration Act; |
| 68 | (q)  Chapter 52, Residential Solar Energy Disclosure Act; |
| 69 | (r)  Chapter 53, Residential, Vocational and Life Skills Program Act; |
| 70 | (s)  Chapter 54, Ticket Website Sales Act; |
| 71 | (t)  Chapter 56, Ticket Transferability Act; |
| 72 | (u)  Chapter 57, Maintenance Funding Practices Act; |
| 73 | (v)  Chapter 61, Utah Consumer Privacy Act; |
| 74 | (w)  Chapter 63, Utah Social Media Regulation Act; |
| 75 | (x)  Chapter 64, Vehicle Value Protection Agreement Act; |
| 76 | (y)  Chapter 65, Utah Commercial Email Act; |
| 77 | (z)  Chapter 67, Online Dating Safety Act; [and] |
| 78 | (aa)  Chapter 68, Lawyer Referral Consultants Registration Act[-] ; and |
| 79 | (bb)  Chapter 71, Utah Minor Protection in Social Media Act. |
| 80 | Section 2.  Section **13-71-101** is enacted to read: |

**CHAPTER 71. UTAH MINOR PROTECTION IN SOCIAL MEDIA ACT**

**Part 1. General Provisions**

83      **13-71-101  (Effective 10/01/24). Definitions.**

| | |
|---|---|
| 84 | (1)  "Account holder" means a person who has, creates, or opens an account or profile to use |
| 85 | a social media service. |
| 86 | (2)  "Age assurance system" means measures reasonably calculated to enable a social media |
| 87 | company to identify whether a current or prospective Utah account holder is a minor |
| 88 | with an accuracy rate of at least 95%. |
| 89 | (3)  "Connected account" means an account on the social media service that is directly |
| 90 | connected to: |
| 91 | (a)  the minor account holder's account; or |
| 92 | (b)  an account that is directly connected to an account directly connected to the minor |
| 93 | account holder's account. |
| 94 | (4)  "Content" means any information, visual depictions, tools, features, links, software, or |

S.B. 194                                                                                      **Enrolled Copy**

95    other materials that appear on or are available or enabled through a social media service.

96    (5)  "Directly connected" means an account on the social media service that is connected to

97        another account by:

98        (a)  sending a request to connect to another account holder and having the request to

99            connect accepted by the other account holder; or

100       (b)  receiving a request to connect from another account holder and accepting the request

101           to connect.

102   (6)  "Director" means the director of the division.

103   (7)  "Division" means the Division of Consumer Protection created in Section 13-2-1.

104   (8)  "Minor" means an individual under 18 years old that:

105       (a)  has not been emancipated as that term is defined in Section 80-7-102; or

106       (b)  has not been married.

107   (9)  "Parent" includes a legal guardian.

108   (10)  (a)  "Personal information" means information that is linked or can be reasonably

109       linked to an identified individual or an identifiable individual.

110       (b)  "Personal information" includes a person's:

111           (i)  first and last name;

112           (ii)  date of birth;

113           (iii)  home or physical address, including street name and city;

114           (iv)  screen or user name that reveals an individual's email address, first name, or last

115               name;

116           (v)  telephone number;

117           (vi)  Social Security number;

118           (vii)  photograph, video, or audio file containing a person's image or voice;

119           (viii)  geolocation information sufficient to identify street name and city; and

120           (ix)  any other identifier that a person may use to contact a specific individual.

121   (11)  "Push notification" means an automatic electronic message displayed on an account

122       holder's device, when the user interface for the social media service is not actively open

123       or visible on the device, that prompts the account holder to repeatedly check and engage

124       with the social media service.

125   (12)  "Resident" means the same as that term is defined in Section 53-3-102.

126   (13)  "Social media company" means an entity that owns or operates a social media service.

127   (14)  (a)  "Social media service" means a public website or application that:

128           (i)  displays content that is primarily generated by account holders and not by the

- 4 -

129    social media company;

130    (ii)  permits an individual to register as an account holder and create a profile that is

131    made visible to the general public or a set of other users defined by the account

132    holder;

133    (iii)  connects account holders to allow users to interact socially with each other

134    within the website or application;

135    (iv)  makes available to each account holder a list or lists of other account holders

136    with whom the account holder shares a connection within the system; and

137    (v)  allows account holders to post content viewable by other users.

138    (b)  "Social media service" does not include:

139    (i)  email;

140    (ii)  cloud storage; or

141    (iii)  document viewing, sharing, or collaboration services.

142    (15)  "User" means an individual who accesses or uses a social media service.

143    (16)  (a)  "Utah account holder" means a person who is a Utah resident and an account

144    holder.

145    (b)  "Utah account holder" includes a Utah minor account holder.

146    (17)  "Utah minor account holder" means a Utah account holder who is a minor.

147    (18)  "Verifiable parental consent" means authorization from a parent for a social media

148    service to collect, use, and disclose personal information of a Utah minor account

149    holder, that complies with the following verifiability requirements:

150    (a)  the social media service shall provide advance notice to the parent describing

151    information practices related to the minor account holder's personal information; and

152    (b)  the social media service shall receive confirmation that the parent received the notice

153    described in Subsection (18)(a).

154    Section 3.  Section **13-71-102** is enacted to read:

155    **13-71-102  (Effective 10/01/24). Legislative findings.**

156    The Legislature finds that:

157    (1)  the state has a compelling interest in safeguarding the well-being and privacy of minors

158    in the state;

159    (2)  the proliferation of social media services has led to the widespread collection and

160    utilization of personal information, exposing minors to potential privacy and identity

161    related harms;

162    (3)  the addictive design features of certain social media services contribute to excessive use

**Enrolled Copy**

163    of a social media service by minors, impacting sleep patterns, academic performance,
164    and overall health;
165    (4)  social media services are designed without sufficient tools to allow adequate parental
166    oversight, exposing minors to risks that could be mitigated with proper parental
167    involvement and control;
168    (5)  the state has enacted safeguards around products and activities that pose risks to minors,
169    including regulations on motor vehicles, medications, and products and services targeted
170    to children;
171    (6)  prolonged and unregulated social media use has been linked to adverse effects on the
172    mental health of minors, including increased rates of anxiety, depression, and social
173    isolation;
174    (7)  existing measures employed by social media companies to protect minors have proven
175    insufficient; and
176    (8)  the state should ensure that minors' personal data is given special protection, as minors
177    may have less awareness of the risks, consequences, and safeguards related to a social
178    media company's processing of minors' personal data.
179        Section 4.  Section **13-71-201** is enacted to read:

180                        **Part 2. General Requirements**

181        **13-71-201  (Effective 10/01/24). Age assurance required.**
182    (1)  A social media company shall implement an age assurance system to determine whether
183    a current or prospective Utah account holder on the social media company's social media
184    service is a minor.
185    (2)  A Utah account holder that the social media company identifies as a minor through the
186    use of an age assurance system is subject to the requirements in Sections 13-71-202 and
187    13-71-203.
188    (3)  A social media company shall:
189    (a)  implement a review process allowing account holders to appeal the account holder's
190    age designation by submitting documentary evidence to establish the account holder's
191    age range; and
192    (b)  review evidence submitted by the account holder and make a determination within
193    30 days of submission of the evidence.
194    (4)  A social media company shall segregate any personal information gathered specifically
195    within the age assurance system and shall not use the personal information for any other

196    purposes except for the purposes listed in Subsections 13-71-204(4)(a) through (f).

197        Section 5.  Section **13-71-202** is enacted to read:

198        <u>**13-71-202**</u>  **(Effective 10/01/24). Requirements for Utah minor account holders.**

199        A social media company shall, for Utah minor account holders on the social media

200    service:

201    (1)  set default privacy settings to prioritize maximum privacy, including settings that:

202        (a)  restrict the visibility of a Utah minor account holder's account to only connected

203            accounts;

204        (b)  limit the Utah minor account holder's ability to share content to only connected

205            accounts;

206        (c)  restrict any data collection and sale of data from a Utah minor account holder's

207            account that is not required for core functioning of the social media service;

208        (d)  disable search engine indexing of Utah minor account holder profiles;

209        (e)  restrict a Utah minor account holder's direct messaging capabilities to only allow

210            direct messaging to connected accounts; and

211        (f)  allow a Utah minor account holder to download a file with all information associated

212            with the Utah minor account holder's account;

213    (2)  implement and maintain reasonable security measures, including data encryption, to

214        protect the confidentiality, security, and integrity of personal information collected from

215        a Utah minor account holder;

216    (3)  provide an easily accessible and understandable notice that:

217        (a)  describes any information the social media company collects from a Utah minor

218            account holder; and

219        (b)  explains how the information may be used or disclosed;

220    (4)  upon request of a Utah minor account holder:

221        (a)  delete the personal information of the Utah minor account holder, unless the

222            information is required to be retained under Section 13-61-203, or a different

223            provision of state or federal law; and

224        (b)  remove any information or material the Utah minor account holder made publicly

225            available through the social media service; and

226    (5)  disable the following features that prolong user engagement:

227        (a)  autoplay functions that continuously play content without user interaction;

228        (b)  scroll or pagination that loads additional content as long as the user continues

229            scrolling; and

230    (c)  push notifications prompting repeated user engagement.

231        Section 6.  Section **13-71-203** is enacted to read:

232        **13-71-203  (Effective 10/01/24). Supervisory tools.**

233    (1)  A social media company shall offer supervisory tools for a Utah minor account holder

234        that the Utah minor account holder may decide to activate.

235    (2)  The supervisory tools described in Subsection (1) shall include capabilities for an

236        individual selected by the Utah minor account holder to:

237    (a)  set time limits for the Utah minor account holder's daily social media service usage

238        across devices;

239    (b)  schedule mandatory breaks for the Utah minor account holder during selected days

240        and times across devices;

241    (c)  view:

242        (i)  data detailing the Utah minor account holder's total and average daily time spent

243            on the social media service across devices;

244        (ii)  a list of connected accounts;

245        (iii)  a list of accounts blocked by the Utah minor account holder;

246        (iv)  the Utah minor account holder's:

247            (A)  privacy settings;

248            (B)  content sensitivity settings; and

249            (C)  direct messaging settings and permissions; and

250    (d)  receive notifications when the Utah minor account holder changes an account setting

251        described in this Subsection (2).

252        Section 7.  Section **13-71-204** is enacted to read:

253        **13-71-204  (Effective 10/01/24). Parental consent -- Data privacy for Utah minor**

254    **accounts.**

255    (1)  A social media company may not allow a Utah minor account holder to change the

256        default data privacy setting described in Subsection 13-71-202(1) without first obtaining

257        verifiable parental consent.

258    (2)  A social media company's terms of service related to a Utah minor account holder shall

259        be presumed to include an assurance of confidentiality for the Utah minor account

260        holder's personal information.

261    (3)  The presumption of confidentiality in Subsection (2) may be overcome if the social

262        media company obtains verifiable parental consent.

263    (4)  The presumption of confidentiality in Subsection (2) does not apply to a social media

264    company's internal use or external sharing of a Utah minor account holder's personal

265    information if the use or sharing is necessary to:

266    (a)  maintain or analyze functioning of the social media service;

267    (b)  enable network communications;

268    (c)  personalize the user's experience based on the user's age and location;

269    (d)  display a username chosen by the Utah minor account holder;

270    (e)  obtain age assurance information as required under Section 13-71-201; or

271    (f)  comply with the requirements of this chapter or other federal or state laws.

272        Section 8.  Section **13-71-301** is enacted to read:

273                              **Part 3. Division Enforcement Powers**

274    **13-71-301**  (Effective 10/01/24). Enforcement powers.

275    (1)  The division shall administer and enforce the provisions of Part 2, General

276    Requirements, in accordance with Chapter 2, Division of Consumer Protection.

277    (2)  The attorney general, upon request, shall give legal advice to, and act as counsel for, the

278    division in the exercise of the division's responsibilities under this part.

279    (3)  (a)  In addition to the division's enforcement powers under Chapter 2, Division of

280    Consumer Protection:

281        (i)  the division director may impose an administrative fine of up to $2,500 for each

282            violation of this chapter; and

283        (ii)  the division may bring an action in court to enforce a provision of this chapter.

284    (b)  In a court action by the division to enforce a provision of this chapter, the court may:

285        (i)  declare that the act or practice violates a provision of this chapter;

286        (ii)  enjoin actions that violate this chapter;

287        (iii)  order disgorgement of any money received in violation of this chapter;

288        (iv)  order payment of disgorged money to an injured purchaser or consumer;

289        (v)  impose a civil penalty of up to $2,500 for each violation of this chapter;

290        (vi)  award actual damages to an injured purchaser or consumer; and

291        (vii)  award any other relief that the court deems reasonable and necessary.

292    (c)  If a court grants judgment or injunctive relief to the division, the court shall award

293    the division:

294        (i)  reasonable attorney fees;

295        (ii)  court costs; and

296        (iii)  investigative fees.

297    (4)  (a)  A person who violates an administrative or court order issued for a violation of
298         this chapter is subject to a civil penalty of no more than $5,000 for each violation.
299         (b)  A civil penalty authorized under this section may be imposed in any civil action
300              brought by the division, or by the attorney general on behalf of the division.
301    (5)  All money received for the payment of a fine or civil penalty imposed under this section
302         shall be deposited into the Consumer Protection Education and Training Fund
303         established in Section 13-2-8.
304         Section 9.  Section **13-71-302** is enacted to read:
305         **13-71-302  (Effective 10/01/24). Age assurance and verifiable parental consent**
306    **safe harbor.**
307    (1)  In accordance with Title 63G, Chapter 3, Utah Administrative Rulemaking Act, the
308         division shall make rules:
309         (a)  to establish processes and means by which a social media company may:
310              (i)   assure whether an account holder is a minor in accordance with Section 13-71-201;
311                    and
312              (ii)  obtain verifiable parental consent in accordance with Section 13-71-203; and
313         (b)  to establish criteria a social media company may use to determine whether the social
314              media company's age assurance system is 95% accurate.
315    (2)  A social media company is not subject to an enforcement action for a violation of
316         Section 13-71-201 if the social media company implements and maintains an age
317         assurance system that complies with rules made by the division as described in
318         Subsection (1)(a)(i).
319    (3)  A social media company is considered to have obtained verifiable parental consent if
320         the social media company obtains parental consent through a mechanism that complies
321         with the rules made by the division as described in Subsection (1)(a)(ii).
322         Section 10.  Section **13-71-401** is enacted to read:
323                                    **Part 4. Severability**
324         **13-71-401  (Effective 10/01/24). Severability.**
325    (1)  If any provision of this chapter or the application of any provision to any person or
326         circumstance is held invalid by a final decision of a court of competent jurisdiction, the
327         remainder of this chapter shall be given effect without the invalid provision or
328         application.
329    (2)  The provisions of this chapter are severable.

330    (3)  Nothing in this chapter shall displace any other available remedies or rights authorized

331        under the laws of this state or the United States.

332        Section 11.  **Effective date.**

333        This bill takes effect on October 1, 2024.

334        Section 12.  **Coordinating S.B. 194 with H.B. 464.**

335        If S.B. 194, Social Media Regulation Amendments, and H.B. 464, Social Media

336    Amendments, both pass and become law, the Legislature intends that, on October 1,

337    2024:

338        (1)  Subsection 78B-3-1101(1) enacted in H.B. 464 be amended to read:

339        "(1)  "Account holder" means the same as that term is defined in Section 13-71-101.";

340        (2)  Subsection 78B-3-1101(4) enacted in H.B. 464 be amended to read:

341        "(4)  "Content" means the same as that term is defined in Section 13-71-101.";

342        (3)  Subsection 78B-3-1101(8) enacted in H.B. 464 be amended to read:

343        "(8)  "Minor" means the same as that term is defined in Section 13-71-101."; and

344        (4)  Subsections 78B-3-1101(12) through (16) enacted in H.B. 464 be amended to

345    read:

346        "(12)  "Social media company" means the same as that term is defined in Section

347    13-71-101.

348        (13)  "Social media service" means the same as that term is defined in Section

349    13-71-101.

350        (14)  "User" means the same as that term is defined in Section 13-71-101.

351        (15)  "Utah account holder" means the same as that term is defined in Section

352    13-71-101.

353        (16)  "Utah minor account holder" means the same as that term is defined in Section

354    13-71-101.".